UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS GONZALEZ,

        Plaintiff,

  -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

**DECISION and ORDER**
**No. 1:15-cv-00767(MAT)**

---

**INTRODUCTION**

Luis Gonzalez ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"),[1] denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**PROCEDURAL STATUS**

On May 11, 2012, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning October 31, 2009. These

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

claims were denied initially on July 25, 2012. Plaintiff filed a written request for a hearing, which was held on August 28, 2013 in Buffalo, New York. Administrative Law Judge David Lewandowski ("the ALJ") presided. David Sypher, an impartial vocational expert ("the VE"), appeared and testified. Plaintiff appeared with his attorney and testified. At the hearing, Plaintiff amended his onset date to February 11, 2011. On April 16, 2014, the ALJ issued an unfavorable decision.[2] Plaintiff's request for review was denied by the Appeals Council on July 2, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

**THE ALJ'S DECISION**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2011, the amended alleged onset date. At step two, the ALJ found that Plaintiff had the following "severe" impairments: lumbar protrusion, asthma, major depressive disorder, and left elbow and shoulder tendinitis. At step three, the ALJ determined that Plaintiff's impairments, considered singly or together, did not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ specifically considered Listings

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

-2-

1.04 (disorders of the spine), 3.03 (asthma), 1.02 (major dysfunction of a joint), and 12.04 (affective disorders).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the exertional requirements of light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), and could frequently perform postural activities; reach, push and pull; must avoid pulmonary irritants; and was able to understand, remember and carry out simple instructions, perform simple tasks, and work in small, familiar groups.

At step four of the sequential evaluation, the ALJ concluded that Plaintiff had past relevant work ("PRW") as an assistant manager at Autozone, doing patient intake at a health care center, retail sales at Macy's, and order picking at a corporate services company. However, he was not able to perform the demands of his PRW. Continuing to step five, the ALJ relied on the VE's testimony (T.77-78) to find there were other jobs existing in the national economy that a person of Plaintiff's age, and with his education, work experience, and RFC, could perform the requirements of the following representative occupations: electrical assembler, inspector/hand packager, and mail sorter. Accordingly, the ALJ entered a finding of "not disabled."

**SCOPE OF REVIEW**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**DISCUSSION**

**I. Failure to Develop the Record**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). "Whether dealing with a pro se claimant or one represented by counsel, the ALJ must 'develop [the claimant's] complete medical history.'" Lopez v. Comm'r of Soc. Sec., 622 F. App'x 59, 60 (2d Cir. 2015) (summary order) (citing 20 C.F.R. § 404.1512; Perez, 77 F.3d at 47 (describing duty to develop record)). "[T]he agency is required affirmatively to seek out additional evidence only where there are 'obvious gaps' in the administrative record." Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) (summary order) (quoting Rosa v. Callahan, 168 F.3d 72, 79 & n. 5 (2d Cir. 1999)). "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Lowry v. Astrue, 474 F. App'x 801, 804 (2d Cir. 2012) (unpublished opn.) (quotations and citations omitted).

**A. Failure to Obtain a Complete Medical History (Plaintiff's Point I.a)**

Plaintiff first contends that the ALJ failed to develop the record by obtaining certain mental health treatment notes from

Lakeshore Behavioral Health. The Commissioner responds that the ALJ was entitled to rely on the assurances provided by Plaintiff's attorney that the record was complete and that he required no further assistance from the ALJ in obtaining records.

Prior to the hearing, on May 14, 2012, attorney Kenneth Hiller, Esq. ("Hearing Counsel") had tried to obtain a medical source statement from Plaintiff's primary care physician, Dr. Raul Vazquez (T.369-79), but Dr. Vazquez had declined to provide one (T.29). At the hearing on August 28, 2013, Hearing Counsel stated that he had no objection to the record, which, at the time contained Exhibits 1-21F. (T.39, 42). Hearing Counsel notified the ALJ that he planned to directly request a medical source statement from Dr. Vazquez, and the ALJ agreed to hold the record open for 30 days; Hearing Counsel confirmed that this would be sufficient time. (T.42). The ALJ also stated that he would subpoena records from Plaintiff's rheumatologist, Dr. Danilo B. Saldana, who had not responded to Hearing Counsel's letter request to provide his treatment notes on Plaintiff. (T.42).

Following the hearing, in a letter dated September 30, 2013 (T.246), Hearing Counsel informed the ALJ that "all the records concerning [Plaintiff] have been submitted and the record may be closed." Hearing Counsel did not indicate that a medical source statement from Dr. Vazquez was needed, and requested no further assistance from the ALJ. Hearing Counsel's law firm continues to

represent Plaintiff on this appeal. (T.153). A different attorney in that firm now argues that the ALJ failed to develop the record in several ways.

First, Plaintiff argues that there are records missing from Lakeshore Behavioral Health ("Lakeshore"). Plaintiff notes that Lakeshore produced a medication management chart indicating that Nurse Practitioner Sharon Yager ("NP Yager") prescribed medication on December 3, 2012; January 10, 2013; February 21, 2013; and April 18, 2013. However, Plaintiff points out, only treatment notes from April 18, 2013, were produced. The Court has reviewed the chart and finds that the first date written by NP Yager is actually December 13, 2012, not December 3, 2012. And, as the Commissioner points out, there is a treatment note for December 13, 2012. Therefore, that record is not missing, leaving January 10, 2013; and February 21, 2013, as the two dates in the chart that are allegedly missing records. However, Plaintiff is speculating that there was treatment provided (e.g., therapy) on those dates. It is also possible that Plaintiff called NP Yager to request medication adjustments and there was no treatment provided other than that.

Second, Plaintiff states that the "treatment plan" dated April 8, 2013 (T.640), indicates that a number of treatment goals were established on January 8, 2013 (T.644-45); Plaintiff surmises that there must have been treatment provided to him on January 8, 2013, but no records bearing that date are in the record. Again,

-7-

this is mere speculation on Plaintiff's part; it is equally likely that the January 8, 2013 appointment was dedicated to developing therapy goals for the upcoming year.

Third, Plaintiff points out that the "Treatment Plan" dated July 8, 2013, summarizes treatment provided on July 8, 2013, but no treatment *notes*, as such, are in the record for this date. This argument makes no sense. The July 8, 2013 record contains various boxes with these headings: "Presenting Problem;" "Significant Events Update (for treatment plan reviews only);" "Progress Towards Goals (for treatment plan reviews only)."  (T.745). All of the boxes are filled in, and contain text entries for July 8, 2013, and April 8, 2013. The fact that the boxes labeled "Significant Events Update" and "Progress Towards Goals" are filled in indicates that the document is simply a "treatment plan review," because, as the form states in parentheses, those entries are to be made in connection with "treatment plan reviews *only.*" (T.745 (emphasis supplied)).

While the ALJ must attempt to fill any "clear gaps" in the record, "where there are no obvious gaps . . . and where the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to seek additional information. Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Plaintiff simply has not shown that there are any gaps in the record, much less an obvious gaps requiring further development of the record by the ALJ. Moreover,

the Commissioner's regulations provided that where a claimant has legal representation, the attorney is "obligat[ed] to assist the claimant in bringing to [the Commissioner's] attention everything that shows that the claimant is disabled[.]" 20 C.F.R. § 404.1740(b)(1) (eff. until Apr. 20, 2015); see also Turby v. Barnhart, 54 F. App'x 118, 122–23 (3d Cir. 2002) (unpublished opn.). In keeping with this principle, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted). In the present case, Hearing Counsel affirmed at the hearing that the record was complete except as to records from Dr. Vazquez and Dr. Saldana, and did not mention anything about missing records from Lakeshore. Then, about a month later, Hearing Counsel informed the ALJ in writing that the record was complete, and could be closed. No request was made to the ALJ for assistance in securing additional evidence from Lakeshore. Under these circumstances, the Court finds that the ALJ did not abdicate his duty to develop the administrative record. See, e.g., Dutcher v. Astrue, No. 09-CV-1161(LEK/VEB), 2011 WL 1097860, at *6 (N.D.N.Y. Mar. 7, 2011)(the court could not say that an ALJ failed in his duty to develop the record where the ALJ permitted ample time for a

claimant's attorney to obtain additional evidence, the attorney offered no credible explanation for his failure to do so, and the evidence that was included in the record supported the ALJ's assessment) (citing Jordan v. Comm'r of Soc. Sec., 142 F. App'x 542, 543 (2d Cir. 2005) (unpublished opn.)), report and recommendation adopted, 2011 WL 1042773 (N.D.N.Y. Mar. 22, 2011).

**B. Failure to Obtain an RFC Assessment from Plaintiff's Primary Care Physician (Plaintiff's Point I.b)**

Plaintiff next argues that the ALJ failed to develop the record by obtaining a medical source statement from his primary care physician, Dr. Vazquez. As discussed above, Hearing Counsel volunteered to personally obtain this statement from Dr. Vazquez. When the ALJ stated that he would keep the record open for 30 days to allow supplementation of the record, Hearing Counsel affirmed that 30 days was sufficient for him to obtain additional records. About a month later, Hearing Counsel affirmed, in writing, that *all* necessary records had been obtained and submitted, and that the record could be closed. (T.246). Again, the Court declines to find that the ALJ failed to fulfill his obligation to develop the record, where Hearing Counsel personally offered to obtain the statement from Dr. Vazquez that he now claims the ALJ should have obtained, subsequently informed the ALJ in writing that the record was complete, and made no request for assistance in securing additional evidence. (T.246). Under these circumstances, the Court finds that the ALJ did not abdicate his duty to develop the

-10-

administrative record. See, e.g., Dutcher, 2011 WL 1097860, at *6 (citing Jordan, 142 F. App'x at 543).

The Court further finds that the absence of a medical source statement did not make the record incomplete. The record here contained all of the treatment notes from Dr. Vazquez, all of the treatment notes from rheumatologist Dr. Saldana, and the report of consultative physician Dr. Donna Miller. The Court finds that the record was "robust enough to enable a meaningful assessment of the particular conditions on which [Plaintiff] claims disability." Sanchez v. Colvin, No. 13 Civ. 6303(PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015). Contrast with Rosa v. Callahan, 168 F.3d 72, 79-80 (2d Cir. 1999) (finding the ALJ committed legal error where the ALJ failed to develop the facts of the case where there were "scant" medical notes and the ALJ did not seek records from numerous physicians referenced in the claimant's testimony).

Furthermore, the Second Circuit has held that the report of consultative physician may constitute substantial evidence to support an ALJ's decision, and can be sufficient even to override the opinion of a claimant's treating source. See Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). Here, Plaintiff reported to consultative physician Dr. Miller on July 6, 2012. (T.604-07). Dr. Miller noted that Plaintiff appeared to be in no acute distress, walked with a normal, walked on his heels and toes without difficulty, could squat fully, used no assistive devices,

needed no help changing for exam or getting on and off exam table, and was able to rise from a chair without difficulty. The results of Dr. Miller's review of his musculoskeletal and neurological systems were unremarkable: his cervical spine showed full flexion, extension, full lateral flexion bilaterally, and full rotary movement bilaterally; he had no scoliosis, kyphosis, or abnormality in his thoracic spine; he had lumbar spine flexion to 70 degrees and extension to 10 degrees; he had lateral lumbar flexion bilaterally to 25 degrees, and full rotary lumbar movement to 25 degrees bilaterally. Straight-leg raising tests were negative bilaterally. He had forward elevation of his shoulders to 120 degrees bilaterally and abduction of his shoulders to 130 degrees bilaterally. He had full range of motion of his elbows, forearms, wrists, hips, and ankles bilaterally. He had knee flexion and extension to 135 degrees bilaterally. His deep tendon reflexes were physiologic (normal) and equal in all extremities; no sensory deficits were noted. He had full strength in the upper and lower extremities. Dr. Miller opined that Plaintiff had a "mild limitation for heavy lifting, bending, carrying, reaching, pushing, and pulling" and that he should avoid environmental irritants. The Court finds that consultative physician Dr. Miller's clinical findings and medical source statement (T.604-07) provide substantial evidence to support the ALJ's RFC finding.

**C. Failure to Obtain a Mental RFC Assessment from a Treating Source (Plaintiff's Point I.c)**

Finally, Plaintiff argues that the ALJ erred in not obtaining an opinion from one of Plaintiff's mental health treatment providers regarding his mental RFC, which caused the ALJ to rely impermissibly on his own "lay judgment" in formulating Plaintiff's RFC.

While medical opinions provide important insights regarding on a claimant's functioning, it is ultimately the ALJ's task to formulate an RFC assessment based on the record as a whole. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity. . . the final responsibility for deciding these issues is reserved to the Commissioner."). "[R]emand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the [claimant]'s residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (unpublished opn.) (holding that "[g]iven the specific facts of this case, including a voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ, . . . it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity").

This was not a case in which the record was devoid of opinions from acceptable medical sources regarding Plaintiff's mental impairments. In addition to Plaintiff's complete records from Lakeshore (where he apparently did not treat with a psychiatrist), the record contains two opinions consultative psychologist Renee Baskin, Ph.D. and State agency review consultant Dr. Juan Echevarria. The ALJ's mental RFC assessment actually provided greater restrictions than those contained in Dr. Baskin's or Dr. Echevarria's opinions, and thus was more favorable to Plaintiff. As the Commissioner notes, Plaintiff has not suggested any additional non-exertional limitations based on his mental impairments that should have been included in the RFC. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (unpublished opn.).

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision does not contain legal error and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Plaintiff's Motion for Judgment on the Pleadings is denied, and Defendant's Motion for Judgment on the

Pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

                                          **S/Michael A. Telesca**

                                          HON. MICHAEL A. TELESCA
                                          United States District Judge

Dated:     February 23, 2018
            Rochester, New York.